# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AGNESIAN HEALTHCARE INC., <br><br> Plaintiff, <br> v. <br><br> CERNER CORPORATION, <br><br> Defendant. | Case No. 17-CV-1254-JPS <br><br><br> **ORDER** |

Plaintiff, Agnesian Healthcare Inc. ("Agnesian"), filed this breach of contract action against Defendant, Cerner Corporation ("Cerner"), in Fond du Lac County Circuit Court. The case was removed to this Court based on the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Docket #1). Cerner has now moved to dismiss the complaint, contending that the parties entered into a binding arbitration agreement that requires Agnesian's claims to be submitted to arbitration in Missouri. (Docket #5). Agnesian opposes the motion, claiming that if arbitration is to occur, it must be in Wisconsin. *See* (Docket #15). For the reasons stated below, the Court must grant Cerner's motion and dismiss this action.

1. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(3) permits dismissal of a case when it is filed in an improper venue. "[A] motion to dismiss based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).'" *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007)). This is because arbitration

clauses are considered a species of forum selection clause. *Auto. Mechs. Local 701*, 502 F.3d at 746; *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533–34 (1995).

**2.    RELEVANT FACTS**

Agnesian is a Wisconsin non-profit corporation based in Fond du Lac, Wisconsin. (Docket #1-1 ¶ 7). Cerner is a Delaware corporation, and its principal place of business is in Kansas City, Missouri. *Id.* ¶ 8. Cerner's principal place of business is located within the jurisdiction of the United States District Court for the Western District of Missouri.

On March 25, 2004, Cerner and Agnesian entered into the Cerner Business Agreement (the "Agreement"). (Docket #1-1, Ex. B).[1] The Agreement provided for the sale and license of several Cerner software products and services. The Agreement contains the following arbitration provision:

> D. Arbitration and Injunctive Relief. In the event of any disagreement or dispute between the parties, Cerner and [Agnesian] agree to work cooperatively to resolve the dispute amicably as set forth in this Section 9.3, or at other appropriate, mutually determined management levels. In the event that a resolution at such management levels does not occur, either party may submit the dispute to binding arbitration at a site in the state of the principal place of business of the non-petitioning party under the then prevailing rules of the American Arbitration Association, Inc., a New York Corporation[.]

*Id.* ¶ 9.3(D).

---

[1] The Court can consider the terms of the Agreement without transforming Cerner's motion from a motion to dismiss into a motion for summary judgment, since the document is central to the case and Agnesian, which attached the document to its complaint, does not challenge its authenticity. *See* Fed. R. Civ. P. 12(d); Fed. R. Civ. P. 10(c); *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

On June 10, 2014, Cerner and Agnesian entered into a Cerner Sales Order. This document is also attached to Agnesian's complaint. (Docket #1-1, Ex. A). The June 2014 Sales Order provides that it is "subject to, and incorporates by reference, the Cerner Business Agreement, dated March 25, 2004, between the Client and Cerner." *Id.* at 1.

On August 16, 2017, Agnesian filed a complaint against Cerner in the Circuit Court of Fond du Lac County, alleging breach of warranty and misrepresentation claims. The claims in this case arise from and center around the Agreement and the June 2014 Sales Order.

**3.    ANALYSIS**

The parties' dispute in this case is not whether arbitration, once invoked, is mandatory.[2] Rather, Agnesian says that if it is forced to arbitrate, it wants to do so in its home state of Wisconsin, while Cerner believes that arbitration must occur in Missouri. Cerner asks that the Court dismiss the case so that the parties can seek an order compelling arbitration in the

---

[2]Agnesian suggests in a single footnote that there may be some doubt as to whether the arbitration provision covers the claims it asserts here, reasoning that the arbitration provision only pertains to claims arising from the Agreement itself. (Docket #15 at 3 n.3). But off-hand remarks in footnotes are not the proper way to raise arguments, *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013), and in any event, the breadth of the language "any disagreement or dispute between the parties" in the arbitration clause, coupled with the incorporation of the Agreement into the June 2014 Sales Order, convinces the Court that the present claims fall within the arbitration provision. *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) ("[A] court should compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). Moreover, Agnesian later undermines its own argument on this point, stating that "the issue presented by Cerner's Motion on venue is the location of arbitration, not arbitrability." (Docket #15 at 9 n.9).

Western District of Missouri. *See Faulkenberg*, 637 F.3d at 808 (a district court may not compel arbitration in another district).[3]

Cerner's argument has two parts. First, it claims that the Agreement did not authorize Agnesian to choose between initiating a lawsuit and submitting its dispute to arbitration. (Docket #6 at 4). Rather, the Agreement leaves the parties only one recourse—arbitration—should their informal meet-and-confer efforts fail. *Id.* Second, it follows that Cerner is the "non-petitioning party" in this dispute and that, as a result, the Agreement mandates the arbitration take place in the Western District of Missouri, where Cerner maintains its principal place of business. *Id.* at 5.

Agnesian responds that it is not the petitioning party merely because it filed this lawsuit. (Docket #15 at 2). It reasons that the arbitration provision does not require Agnesian to submit the dispute to arbitration initially. *Id.* Rather, the provision states that "either party *may submit* the dispute to binding arbitration[.]" (Docket #1-1, Ex. B ¶ 9.3(D) (emphasis added)). Thus, says Agnesian, it was entitled to initiate litigation rather than seek arbitration from the start. (Docket #15 at 3–6). Cerner, nevertheless, maintains that Agnesian was required to proceed only in arbitration. (Docket #16 at 4). Cerner says that the proper interpretation of the permissive language in the arbitration clause is that "the plaintiff 'has a choice between pursuing claims in arbitration and abandoning them

---

[3]Cerner also suggests that the Court could simply transfer this case to the Western District of Missouri, citing *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009). True, the Seventh Circuit in that case suggested that a transfer of venue might be sought in a case like this one. *See id.* But the Seventh Circuit more clearly stated that "[w]hen a complaint requesting arbitration is filed in the wrong forum, the appropriate response is for the opposing party to file a motion to dismiss, which should then be granted by the court." *Id.* The Court will hew to this protocol.

altogether.'" *Id.* (quoting *PTA-FLA, Inc. v. ZTE USA, Inc.*, No. 3:11-CV-510-J-32JRK, 2011 WL 5024647, at *4 (M.D. Fla. Oct. 21, 2011)).

Agnesian's view of the arbitration clause is not indefensible, but the Court finds that Cerner's is the more logical reading, and the one more consistent with long-standing interpretations of similar language. Under Agnesian's reading, the "either party may" language gives it the option to seek relief in court, leaving Cerner the task of invoking arbitration if it chooses. However, recall that the arbitration provision requires the parties to first engage in informal meet-and-confer efforts at various specified management levels in an attempt to resolve any disputes between them. (Docket #1-1, Ex. B ¶ 9.3(D)). The clause then provides that, "[i]n the event that a resolution at such management levels does not occur, either party may submit the dispute to binding arbitration[.]" *Id.* When considered in context, the use of the word "may" simply indicates that if meet-and-confer efforts fail, either party is allowed to continue the dispute resolution process in arbitration. "May" therefore refers to the availability of a next step in dispute resolution—arbitration—and is not meant to provide that arbitration is one among a range of next steps in that process. Thus, Cerner's interpretation fits better within the arbitration provision as a whole.

Not only is Cerner's interpretation of the provision linguistically stronger than Agnesian's, it is also in line with the Seventh Circuit's interpretation of a similar arbitration provision in *Ceres Marine Terminals, Inc. v. International Longshoremen's Association*, 683 F.2d 242, 246 (7th Cir. 1982). There, an employer sued a union over alleged violations of the collective bargaining agreement. *Id.* at 243. The union moved to compel arbitration as provided in the agreement. *Id.* The agreement set forth a detailed dispute resolution process, including an informal grievance

procedure that had to be completed before a party could pursue arbitration. *Id.* at 244. Once that grievance process was completed, the contract stated that a dissatisfied party "may" seek arbitration. *Id.* at 245.

The employer believed that this permissive language allowed it to forgo arbitration and file a lawsuit, but the Court of Appeals disagreed. *Id.* The Seventh Circuit observed that even if a contract "uses the word 'may' or other facially 'permissive' language in establishing arbitration procedures," it "does not necessarily give a party to that agreement the option of either submitting its claim to arbitration or by-passing arbitration and seeking immediate recourse to the courts." *Id.* at 246. Rather, the use of the word "may" meant that the aggrieved party had two options: continue the dispute resolution process in arbitration or relinquish its claim entirely. *Id.* Put differently, the term "may" was included in the contract to show that arbitration could be sought only once the preliminary, informal process was exhausted; it was not meant to give leave litigation as an avenue for the aggrieved party once that process was completed. *See id.* at 247.

Indeed, the Seventh Circuit so concluded even though another provision of that contract—which has no analogue in the Agnesian-Cerner Agreement—provided that the employer could seek "any other remedy" in addition to the grievance-arbitration procedure. *See id.* at 245–47. Consequently, evaluating the relevant provisions in context, the Seventh Circuit concluded that arbitration was the employer's only permissible resort for the dispute in question. *Id.* at 247. This approach is consistent with holdings from many other Circuit courts. *See Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 879 (4th Cir. 1996); *United Steelworkers of Am. v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1279 (3d Cir. 1979); *Local 771, I.A.T.S.E. v. RKO General, Inc.*, 546 F.2d 1107, 1116 (2d Cir. 1977); *J. C. Bonnot*

v. *Congress of Indep. Unions Local #14*, 331 F.2d 355, 359 (8th Cir. 1964); *see also Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 204 n.1 (1985) ("The use of the permissive 'may' is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures.").

The Seventh Circuit's analysis in *Ceres* maps directly onto the present dispute. In fact, Agnesian's position is weaker than that of the employer in *Ceres*, since Agnesian has directed the Court to no other provision of the Agreement corroborating its construction of the arbitration clause. Thus, although the Seventh Circuit conceded that the *Ceres* agreement might be ambiguous, *Ceres*, 683 F.2d at 247, here there is little, if any, ambiguity. The Agreement sets forth a sequential dispute resolution process, and the final step is arbitration—or nothing. *Bonnot*, 331 F.2d at 359 ("The obvious purpose of the 'may' language is to give an aggrieved party the choice between arbitration or the abandonment of its claim.")

Agnesian's cited authorities do not suggest otherwise. Take, for instance, *Benihana of Tokyo, LLC v. Benihana, Inc.*, 73 F. Supp. 3d 238, 249 (S.D.N.Y. 2014). Agnesian cites this case for the following proposition: "that a party 'may' elect to submit a dispute to binding arbitration merely means that neither party is obliged to initiate ('submit a dispute to') arbitration." *Id.* While facially supportive of Agnesian's argument here, the statement is plucked out of context.

In that case, one corporation sued another over termination of a license agreement. *See id.* at 244–45. The defendant moved to compel arbitration under the parties' agreement. *Id.* The contract provided that a dispute about termination "shall be settled by arbitration," while for "any other dispute" between the parties, "either party. . .may elect to submit the dispute to arbitration." *Id.* at 244. The agreement stated that the right to elect

to arbitrate other disputes "shall not be exclusive of any other rights which a party may have to pursue a course of legal action in an appropriate forum." *Id.*

The plaintiff contended that arbitration of the dispute in question, which fell under the "other disputes" clause, was not required. *Id.* at 249. Because a party "may" elect for arbitration of those disputes, the plaintiff reasoned that arbitration was optional and that the party could institute a lawsuit instead. *Id.* Moreover, the plaintiff asserted that it could not be forced to arbitrate even upon the defendant's request. *Id.* The district court disagreed, noting that the permissive language in the agreement meant only that the plaintiff was not required to initiate arbitration. *Id.* If his opponent demanded it, however, arbitration was mandatory. *Id.*

*Benihana* is distinguishable from this case, and for reasons the district court itself observed. There, the arbitration provision reserved to the parties the right to "pursue a course of legal action in an appropriate forum" rather than seek arbitration. *Id.* at 244. The Agreement between Agnesian and Cerner gives no such leeway. By its plain terms, it provides that the only additional step in dispute resolution following informal meet-and-confer efforts can be arbitration. The district court in *Benihana* appreciated this distinction when it discussed *RKO General*, the Second Circuit case espousing the same view of permissive arbitration language that was adopted in *Ceres*. *See id.* at 250. In *RKO General*, the contract did not "impl[y] that the parties had the option of invoking some remedy other than arbitration." *RKO General*, 546 F.2d at 1116. Thus, the issue in *RKO General* was "whether arbitration was the *exclusive* remedy available to the parties, so as to bar a federal-court lawsuit." *Benihana*, 73 F. Supp. 3d at 250 (emphasis in original). "*RKO General* did not, however, concern the issue

here, which is whether, upon a motion to compel, arbitration is compulsory." *Id.*; *see also James River Ins. Co. v. Atl. Bldg. Sys.*, LLC, Civil Action No. 16–cv–01981–MSK–NYW, 2017 WL 1862303, at *4 (D. Colo. May 9, 2017) (addressing whether one party could demand arbitration, not whether arbitration was the exclusive remedy in a dispute); *Smith v. AHS Okla. Heart, LLC*, No. 11–CV–691–TCK–FHM, 2012 WL 3156878, at *1 (N.D. Okla. June 6, 2012) (same).

This explanation makes clear that *RKO General* is far more analogous to the present circumstances than *Benihana*. As in *RKO General*, the Agreement here does not suggest that the parties may seek some other remedy besides arbitration. Crucially, the reservation of litigation rights in the *Benihana* contract has no counterpart in the Agnesian-Cerner Agreement. Put simply, this case is not about whether Cerner has the right to invoke arbitration; Agnesian readily concedes this. (Docket #15 at 2). Rather, the question here is whether Agnesian had the right to open the dispute in court if it desired. The language of the Agreement, coupled with the teachings of the cases discussed above, obliges the Court to answer that question in the negative.

The Court's conclusion is also congruent with Wisconsin's approach to contract interpretation. In interpreting arbitration provisions, courts generally apply state contract law, and in this case the Agreement provides that it must be interpreted under Wisconsin law. *See James v. McDonalds Corp.*, 417 F.3d 672, 677 & n.2 (7th Cir. 2005); (Docket #1-1 Ex. B ¶ 9.15). Wisconsin courts seek to "give effect to the parties' intent, as expressed in the contractual language." *Seitzinger v. Cmty. Health Network*, 676 N.W.2d 426, 433 (Wis. 2004). To do so, the court must read the language "consistent with what a reasonable person would understand the words to mean under

the circumstances." *Id.* Here, a common-sense and contextual reading of the arbitration provision leads to Cerner's interpretation. Agnesian's reading, while theoretically possible and not foreclosed by the text of the Agreement, is at odds with what numerous Circuit courts have found to be a reasonable interpretation of nearly identical language.[4]

Indeed, to find otherwise would place Cerner in the unenviable position of having to initiate arbitration against itself in order to avoid court action. Undeniably it is Agnesian, and not Cerner, who seeks to initiate a dispute. Although Agnesian is the aggressor, it seeks to gain a favorable venue by filing a lawsuit and placing the onus on Cerner to invoke arbitration. This would, in turn, make Cerner the party petitioning for arbitration and force it to arbitrate in Agnesian's home state. (Docket #1-1, Ex. B ¶ 9.3(D)) (providing that arbitration must occur "at a site in the state of the principal place of business of the non-petitioning party"). Such gamesmanship cannot be tolerated; if Agnesian has a dispute with Cerner, the contract says that it must take its complaint to Cerner. This is true notwithstanding the fact that Cerner may not at present have made a formal motion to compel arbitration. *See Sims v. Montell Chrysler, Inc.*, 317 F. Supp. 2d 838, 841 (N.D. Ill. 2004) (a defendant may seek a stay of proceedings in favor of arbitration even though it has not yet sought to compel arbitration). In the end, even if the Court found that Agnesian's construction of the arbitration clause was colorable, it must resolve ambiguities in favor of arbitration, not against it. *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

---

[4]Because the plain meaning of the arbitration clause belies Agnesian's interpretation, the Court need not and cannot place any weight on its citation to extrinsic sources, such as the American Arbitration Association rules or the provisions of the Federal Arbitration Act. *See Seitzinger*, 676 N.W.2d at 433.

*Corp.*, 460 U.S. 1, 24–25 (1983). Thus, the Court finds that Agnesian's decision to initiate litigation was not permitted under the Agreement, making venue in this District inappropriate.

**4.    CONCLUSION**

This case must be dismissed for improper venue because Agnesian was not allowed under the parties' contract to initiate a lawsuit rather than arbitration. Although it appears that the parties will agree to arbitrate if it is sought in Missouri, the Court leaves any question of the enforceability of the arbitration provision for the Western District of Missouri to decide, if necessary. No formal demand for arbitration has been made, and so the Court has no occasion to decide whether it should be enforced.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Docket #5) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice** for improper venue.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 8th day of December, 2017.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge